IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRYNITY HOOD-ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>NEW CASTLE COUNTY, DELAWARE; SEAN SWEENEY-JONES, individually and in his official capacity as an officer for the NEW CASTLE COUNTY POLICE DEPARTMENT; and VAUGHN M. BOND, JR., in his official capacity as Director of Public Safety for New Castle County,<br><br>Defendants. | Civil Action No. 24-1012-CFC |

---

Michael P. Minuti, MCCANN DILLON JAFFE & LAMB, LLC, Wilmington, Delaware

    *Counsel for Plaintiff*

Helene E. Episcopo, NEW CASTLE COUNTY GOVERNMENT CENTER, New Castle, Delaware; Karen V. Sullivan, NEW CASTLE COUNTY LAW DEPARTMENT, New Castle, Delaware; Michael F. McTaggart, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware

    *Counsel for Defendants*

### **MEMORANDUM OPINION**

January 13, 2026
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

    This case arises out of the treatment of Plaintiff Trinity Hood-Anderson while she was in the custody of the New Castle County Police Department. Defendants are New Castle County, Delaware (the County); Sean Sweeney-Jones, individually and in his official capacity as an officer of the New Castle County Police Department; and Vaughn M. Bond, Jr.[1] in his official capacity as Director of Public Safety for New Castle County.[2] In the First Amended Complaint, Hood-Anderson alleges several federal civil rights and state tort law claims against Defendants. *See* D.I. 8. Pending before me is Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.I. 10.

_____

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Elmer Setting, the current Director of Public Safety for New Castle County, will replace Vaughn M. Bond, Jr. as a defendant. *See* D.I. 20 at 1 n.1 (stating that Bond has been replaced by Elmer Setting as Director of Public Safety); Fed. R. Civ. P. 25(d) ("[A public] officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . .").

[2] At several places in the Amended Complaint, Hood-Anderson refers to "Defendant Officers," both "known and unknown." *See, e.g.*, D.I. 8 ¶¶ 53, 62. The Amended Complaint does not name any other officers as defendants. I will therefore consider Hood-Anderson's claims against the named defendants only.

## I.　BACKGROUND

### A.　Alleged Facts in Amended Complaint

The following facts are taken from the allegations in the Amended

Complaint.  I must accept these facts as true for purposes of deciding the merits of

a Rule 12(b)(6) motion to dismiss.  *See Umland v. PLANCO Fin. Servs., Inc.*, 542

F.3d 59, 64 (3d Cir. 2008).

On November 21, 2022, Hood-Anderson was charged with assault in the

third degree and two counts of endangering the welfare of a child.  D.I. 8 ¶ 16.

After being charged, the New Castle County Police Department took Hood-

Anderson into custody.  D.I. 8 ¶ 15.  While in police custody, Hood-Anderson was

kept in a holding cell.  *See* D.I. 8 ¶¶ 17, 18.  About twenty minutes after midnight

on November 21, 2022, Officer Sweeney-Jones "forcefully grabbed, pushed,

punched, tackled, and/or otherwise struck [Hood-Anderson] prior to and while she

was in" the holding cell.  D.I. 8 ¶ 17.  Officer Sweeney-Jones and other officers

also threatened to tase Hood-Anderson.  D.I. 8 ¶ 26.

Officer Sweeney-Jones's actions injured Hood-Anderson, causing her to

require medical treatment.  D.I. 8 ¶ 22.  Despite suffering these injuries, Hood-

Anderson was forced to stay in the holding cell without proper medical care.

D.I. 8 ¶ 24.  On November 21, 2024,[3] Hood-Anderson went to Christiana Care medical center seeking treatment for "facial contusions, cervical strain, blunt head injury, and contusion of her hip." D.I. 8 ¶ 27.  On December 14, 2022, Hood-Anderson sought treatment for headaches at Newark 24/7 Urgent Care.  D.I. 8 ¶ 28.

### B.    Procedural Posture

On September 5, 2024, Hood-Anderson filed suit against Defendants. D.I. 1.  Defendants moved to partially dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  D.I. 6.  Instead of opposing Defendants' motion to dismiss, Hood-Anderson amended the Complaint on November 5, 2024. D.I. 8.  On December 6, 2024, Defendants filed the present motion to dismiss

---

[3] The Amended Complaint alleges that Hood-Anderson went to Christiana Care medical center on November 21, 2024, rather than November 21, 2022.  D.I. 8 ¶ 27.  The date "November 21, 2024" appears to be a typo.  The injuries described in paragraph twenty-seven of the Amended Complaint are consistent with the incident that allegedly occurred on November 21, 2022.  *See* D.I. 8 ¶ 27 (describing Hood-Anderson's alleged "facial contusions, cervical strain, blunt head injury, and contusion of her hip").  The Amended Complaint also alleges that Hood-Anderson sought medical treatment "for headaches" on December 14, 2022, less than a month after the alleged incident.  D.I. 8 ¶ 28.  November 21, 2024 is also more than two months after Hood-Anderson filed her initial complaint in this case.  *See* D.I. 1.

Both parties, however, state in their briefing that Hood-Anderson went to a Christiana Care medical center on November 21, 2024.  D.I. 11 at 5; D.I. 16 at 6. For the purposes of deciding Defendants' Motion to Dismiss (D.I. 10), I will accept the fact as true.

several counts of the First Amended Complaint (the Amended Complaint) pursuant to Rules 12(b)(1) and 12(b)(6).  D.I. 10.

The Amended Complaint originally had ten counts.  D.I. 8.  In her opposition to Defendants' motion, Hood-Anderson agreed to dismiss the § 1986 claims in Counts I, II, and III as well as the entirety of Counts IV, VI, and IX. D.I. 16 at 3.  I will therefore dismiss those counts.

Hood-Anderson also agreed to dismiss her official capacity claims against Bond and Sweeney-Jones that I "deem[] to be redundant."  D.I. 16 at 3.  Hood-Anderson argues, however, that "any such claims should remain proper if either Defendant is deemed necessary to any specific Count."  D.I. 16 at 3.  In her briefing, Hood-Anderson repeatedly states, "[s]hould the Court find [that] official capacity claims against Defendant Sweeney-Jones or Bond are necessary for this count to remain, then [t]he Plaintiff retracts [her] prior dismissal of Sweeney-Jones['s] and/or Bond['s] official capacity claims as to this Count."  D.I. 16 at 5.

I am puzzled by what Hood-Anderson seeks to do here.  Hood-Anderson has volunteered to dismiss her official capacity claims against Bond and Sweeney-Jones.  D.I. 16 at 3.  But she has also tried to reserve the right to revoke her voluntary dismissal, depending on whether I consider those claims to be "necessary."  D.I. 16 at 3.  I am not dealing here with a pro se individual.  Hood-Anderson is thus responsible for "advancing the facts and arguments entitling [her]

to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment). Hood-Anderson has failed to argue that the official capacity claims against Sweeney-Jones and Bond are necessary. Accordingly, I will dismiss Hood-Anderson's claims against Bond and Sweeney-Jones in their official capacities. Because Hood-Anderson has sued Bond solely in his official capacity, no counts remain against Bond. Thus, the only remaining defendants are the County and Officer Sweeney-Jones in his personal capacity.

All the remaining counts are brought pursuant to federal civil rights statutes—42 U.S.C. §§ 1983 and 1985—or Delaware tort law. Counts I through III assert both § 1983 and § 1985 claims. In Count I of the Amended Complaint, Hood-Anderson alleges that, while working as a police officer for the County, Officer Sweeney-Jones's use of excessive force violated the Fourth and Fourteenth Amendments. D.I. 8 ¶¶ 31–50. In Count II, Hood-Anderson alleges that Defendants' "denial of medical care" deprived Hood-Anderson of her Eighth Amendment right against cruel and unusual punishment. D.I. 8 ¶¶ 51–56. In Count III, Hood-Anderson alleges that Officer Sweeney-Jones's actions violated the Due Process Clause of the Fourteenth Amendment. D.I. 8 ¶¶ 57–63. In Count V, Hood-Anderson asserts a "municipal liability for failure to train" claim, alleging that Defendants failed to adequately train police officers on how to place custodial detainees in holding cells. D.I. 8 ¶¶ 74–84. And in Count X, Hood-Anderson

alleges that the actions of Officer Sweeney-Jones, and by extension the County, were grossly negligent.  D.I. 8 ¶¶ 106–122.  Hood-Anderson seeks damages and costs.  D.I. 8 ¶ 123.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

A district court "may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (internal quotation marks and citation omitted).  To state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B.    Rule 12(b)(1)

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) is characterized as either a facial or factual challenge to the court's subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). In a factual attack, the court may consider any evidence submitted by the parties that is relevant to the issue of jurisdiction. *Davis*, 824 F.3d at 346 ("[A] factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'") (quoting *Const. Party of Pa. v. Aichele*, 757

F.3d 347, 358 (3d Cir. 2014)).  In such cases, "no presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional

claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does

in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891

(3d Cir. 1977); *see also Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at

891).

## III.  DISCUSSION

### A.    Counts I, II, and III (§§ 1983 and 1985 Claims)

Counts I, II, and III each assert claims under 42 U.S.C. §§ 1983 and 1985.

In the Amended Complaint, Counts I, II, and III are directed against all three

Defendants.  D.I. 8 ¶¶ 32, 52, 58.  Because, however, Hood-Anderson agreed to

dismiss all official capacity claims against Bond and Officer Sweeney-Jones,

D.I. 16 at 3, Counts I, II, and III are now directed only to the County and Officer

Sweeney-Jones in his personal capacity.

### 1.    Section 1983 Claims

Hood-Anderson alleges in Count I that Officer Sweeney-Jones's use of

excessive force violated her Fourth and Fourteenth Amendment rights "to be free

from excessive, unreasonable force" and "unreasonable search and seizure."  D.I. 8

¶ 40.  In Count II, Hood-Anderson alleges that Defendants' denial of medical care

"deprived Plaintiff of her right to be secure in her person against cruel and unusual

punishment" under the Eighth Amendment. D.I. 8 ¶ 53. Hood-Anderson alleges in Count III that Defendants' actions violated the Due Process Clause of the Fourteenth Amendment. D.I. 8 ¶¶ 59–60.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[M]unicipalities and other local government units [are] . . . persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

### a.    The County

Defendants seek to dismiss the § 1983 claims against the County in Counts I, II, and III because "Plaintiff fails to allege facts sufficient to state a [§] 1983 claim for municipal liability" under *Monell*. D.I. 11 at 10.

The § 1983 claims against the County fail for two reasons. Hood-Anderson first relies upon an impermissible *respondeat superior* theory as the basis for the County's liability. *See* D.I. 8 ¶¶ 49, 52, 60. Such a theory is improper as a matter of law under *Monell*. 436 U.S. at 691. "[A] municipality cannot be held liable

*solely* because it employs a tortfeasor—or, in other words, a municipality cannot

be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at

691 (emphasis in the original).  The Supreme Court has noted that a "stringent

standard of fault" is required "lest municipal liability under § 1983 collapse into

*respondeat superior*." *Connick v. Thompson*, 563 U.S. 51, 70 (2011) (quoting *Bd.*

*of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).  Instead,

"[t]o plead a municipal liability claim, a plaintiff must allege that 'a [local]

government's policy or custom . . . inflict[ed] the injury' in question." *Estate of*

*Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436

U.S. at 694).

Counts I, II, and III each allege that the County is liable based on *respondeat*

*superior*. *See* D.I. 8 ¶¶ 49, 52, 60.  The only actions alleged in Count I are those of

Officer Sweeney-Jones.  D.I. 8 ¶¶ 33–50.  The County is implicated only to the

extent that Officer Sweeney-Jones "was employed by [the County]."  D.I. 8 ¶ 35.

Hood-Anderson seeks to hold Officer Sweeney-Jones, "and *by extension* [the

County]" liable.  D.I. 8 ¶ 49 (emphasis added).  Count II also focuses solely on

Officer Sweeney-Jones's actions, but liability is "directed to" the County too.

D.I. 8 ¶¶ 52–56.  In Count III, Hood-Anderson alleges that her substantive due

process rights under the Fourteenth Amendment were violated "[a]s a result of

affirmative acts of [Officer Sweeney-Jones] *and therefore [the County]*."  D.I. 8

¶ 60 (emphasis added).  Hood-Anderson even argues in her briefing that she "has met the necessary requirements" for the § 1983 claims in Counts II and III "against [the County] per *Respondeat Superior*."  D.I. 16 at 4.  Hood-Anderson's use of *respondeat superior* to impose § 1983 liability on the County is improper as a matter of law.

The § 1983 claims against the County also fail because the Amended Complaint contains no factual allegations from which I can infer that a municipal policy or custom caused Hood-Anderson's alleged injuries.  "A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation."  *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991).  Thus, a municipality may be sued directly if it is alleged to have violated the plaintiff's constitutional rights through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers."  *Monell*, 436 U.S. at 690.  A municipality also may be sued under § 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690–91.  A custom exists only if "a given course of conduct [is] so well-settled and permanent as to virtually constitute law."  *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019).

11

Counts I, II, and III are devoid of factual allegations that plausibly imply that the County had a policy or custom that violated Hood-Anderson's constitutional rights. The allegations in Counts I, II, and III instead focus entirely on the individual actions of Officer Sweeney-Jones. *See* D.I. 8 ¶¶ 31–50, 53–56, 59–63. Count I refers repeatedly to "[t]he actions," D.I. 8 ¶ 40, and "[t]he acts," D.I. 8 ¶ 45, of Officer Sweeney-Jones. But there is no mention of a municipal policy that required Officer Sweeney-Jones to act in this way. Nor is there any allegation that this conduct occurred so frequently among New Castle County police officers such that it constitutes a custom. *See Forrest*, 930 F.3d at 106 (stating that, to be a custom, "a given course of conduct [must be] so well-settled and permanent as to virtually constitute law").

Counts II and III also lack any factual allegations that may establish a policy or custom. *See* D.I. 8 ¶¶ 51–63. The only possible reference to a policy or custom in these counts is a conclusory statement in the Amended Complaint that Officer Sweeney-Jones's "actions were consistent with the customs or practices of Defendants [Bond] and [the County]." D.I. 8 ¶ 12. Hood-Anderson does not allege any facts to support this assertion. In the absence of any factual allegations to support the existence of a policy or custom, Hood-Anderson's "mere conclusory statements" are not sufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

I will therefore dismiss without prejudice the § 1983 claims against the County in Counts I, II, and III.

### b.    Sweeney-Jones

Defendants also seek to dismiss the § 1983 claims in Counts II and III against Officer Sweeney-Jones.  D.I. 11 at 3, 16–18.

### (i)    Count II (Eighth Amendment)

Defendants argue that the § 1983 claim in Count II should be dismissed with prejudice because "the Eighth Amendment does not provide a cause of action to bring the pre-trial detention medical care claims alleged in Count II."  D.I. 11 at 16.

Because the Eighth Amendment "was designed to protect those convicted of crimes," the Cruel and Unusual Punishment Clause "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (internal quotation and citation omitted).  That is, the Cruel and Unusual Punishments Clause of the Eighth Amendment "does not apply until 'after sentence and conviction.'"  *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)).  Pretrial detainees are therefore not entitled to the protections of the Eighth Amendment.  *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987).  The parties do not dispute that Hood-Anderson

13

was a pretrial detainee. *See* D.I. 8 ¶¶ 15–17 (alleging that Hood-Anderson was detained in a holding cell after being charged); D.I. 11 at 16; D.I. 16 at 19–20. Hood-Anderson thus cannot base the § 1983 claim in Count II on the Eighth Amendment.

Hood-Anderson argues, however, that even if the Eighth Amendment does not provide a basis for the § 1983 claim in Count II, "Plaintiff clearly identified [her] [§] 1983 [d]ue process claim in Count III of her Amended Complaint" and "thus intends to pursue her [§] 1983 claim under the Due Process Clause in Count III." D.I. 16 at 19–20.

Count III does not appear to challenge the same conduct as alleged in Count II. Count II alleges that Defendants "fail[ed] to provide timely medical treatment to Plaintiff," D.I. 8 ¶ 55, resulting in a "denial of medical care," D.I. 8 ¶ 53. Count III, by contrast, alleges more broadly that Defendants violated Hood-Anderson's "rights to be free from unwarranted state interference involving operational and tactical ineptitude along with excessive and brutal use of physical force that was applied in such a manner as to shock the conscience." D.I. 8 ¶ 62. It is unclear to me whether "operational and tactical ineptitude" encompasses an alleged denial of medical care. Aside from this vague reference to "operational and tactical ineptitude," Count III is silent with respect to medical care. Hood-Anderson

14

cannot advance a denial of medical care claim in Count III absent factual allegations that Defendants denied Plaintiff medical treatment.

Even if I were to consider Hood-Anderson's denial of medical care claim under the substantive due process theory articulated in Count III, Hood-Anderson nevertheless fails to state a claim. The Amended Complaint states in a conclusory fashion that "Plaintiff was caused to remain in the holding cell without proper medical care." D.I. 8 ¶ 24. Yet Hood-Anderson does not plead facts sufficient to establish an inference that Defendants did, in fact, deny Hood-Anderson medical care while in their custody. The Amended Complaint merely provides "a formulaic recitation of the elements" of a denial of medical care claim. *Twombly*, 550 U.S. at 555. Accordingly, I will dismiss the § 1983 claim in Count II against Officer Sweeney-Jones.[4]

### (ii)     Count III (Substantive Due Process)

Defendants also seek to dismiss the § 1983 claim in Count III against Officer Sweeney-Jones. D.I. 11 at 17–18. Defendants argue that "[a]side from Plaintiff's conclusory allegations that Defendant Sweeney-Jones was acting under color of

---

[4] Count II is also directed to the County. D.I. 8 ¶ 52. For the reasons stated above, I have already dismissed the § 1983 claim in Count II against the County. But because the Eighth Amendment cannot serve as a basis for liability in cases involving pretrial detainees, the § 1983 claim in Count II also fails against the County for this reason.

state law, Plaintiff failed to allege facts demonstrating that [Officer Sweeney-Jones's] acts were more than personal pursuits . . . [or] were related to the state authority conferred on him." D.I. 11 at 18 (footnote omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To act "under color of state law," a defendant must be "clothed with the authority of state law." *Id.* at 49 (internal quotation omitted). "[A]n otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995). Rather, the defendant's act "must entail '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Here, the Amended Complaint adequately alleges that Officer Sweeney-Jones was acting under color of state law. Defendants point to three paragraphs of the Amended Complaint as the only support that Officer Sweeney-Jones was acting under color of state law. D.I. 11 at 18 n.3 (citing D.I. 8 ¶¶ 61, 62, 63). But several factual allegations suggest otherwise. At the time of the alleged incident, Hood-Anderson was detained in a New Castle County holding cell. D.I. 8 ¶ 17.

16

Officer Sweeney-Jones was acting as an employee of the New Castle County Police Department. D.I. 8 ¶ 4. Officer Sweeney-Jones's interactions with Hood-Anderson appear consistent with the duties of a police officer at a detention center—namely, putting a detainee in a holding cell. *See* D.I. 8 ¶¶ 17–21. Hood-Anderson has therefore alleged sufficient facts to support an inference that Officer Sweeney-Jones was acting under color of state law.

Defendants also argue—for the first time—in their reply brief that I should dismiss the § 1983 claim in Count III against Officer Sweeney-Jones because "[c]ourts should apply the specific amendment that is concerned with the alleged violation, instead of allowing a substantive due process claim to proceed." D.I. 20 at 8. Because "Plaintiff's substantive due process claim duplicates her [Fourth Amendment excessive force] claim in Count I," Defendants assert that the § 1983 claim in Count III should be dismissed. D.I. 20 at 8. By failing to make this argument in their opening brief, Defendants have waived it. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014) ("We have consistently held that [a]n issue is waived unless a party raises it in its opening brief . . . .") (alteration in original) (internal quotation marks and citation omitted). Because Defendants have made no other arguments with respect to this claim, I will not dismiss the § 1983 claim in Count III against Officer Sweeney-Jones.

2.    **Section 1985 Claims**

Defendants argue that the § 1985 claims in Counts I, II, and III should be

dismissed against the County and Officer Sweeney-Jones because the Amended

Complaint "does not allege any facts related to a conspiracy . . . let alone any of

the other elements required of any § 1985 claim." D.I. 11 at 8.

Section 1985 prohibits conspiracies to interfere with civil rights. 42 U.S.C.

§ 1985. Section 1985 recognizes three categories of conspiracies that may

interfere with an individual's civil rights: (1) preventing an officer from

performing duties; (2) obstructing justice or intimidating a party, witness, or juror;

and (3) depriving a person of rights or privileges. 42 U.S.C. § 1985.

The § 1985 claims in Counts I, II, and III fail, as Hood-Anderson has not

alleged an indispensable component of a § 1985 claim—conspiracy. Every

subsection of § 1985 requires, at a minimum, that "two or more persons in any

State or Territory conspire." *See* 42 U.S.C. § 1985. Thus, regardless of the

subsection of § 1985 under which a plaintiff proceeds, a plaintiff must allege a

conspiracy. "[A]llegations of a conspiracy must provide some factual basis to

support the existence of the elements of a conspiracy: agreement and concerted

action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (quoting

*Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1480–81 (10th Cir. 1990)).

To plead an unconstitutional conspiracy, "a plaintiff must assert facts from which a

18

conspiratorial agreement can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). This agreement, or "meeting of the minds," can be established by direct or circumstantial evidence. *See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a 'meeting of the minds.'") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The Amended Complaint fails to allege any facts that support an inference that Defendants conspired to interfere with Hood-Anderson's civil rights. At most, Hood-Anderson alleges that Officer Sweeney-Jones and "another unknown officer," D.I. 8 ¶ 20, or "other officers," D.I. 8 ¶ 26, engaged in unconstitutional conduct. In Count II, Hood-Anderson alleges a denial of medical care by "Defendant Officers," D.I. 8 ¶ 53, referring to Officer Sweeney-Jones and "currently unknown co-employee officers," D.I. 8 ¶ 56. Count III also mentions "Officer Defendants, both known and unknown." D.I. 8 ¶ 62. But mere references to Officer Sweeney-Jones working alongside another officer do not establish a conspiracy. Aside from these vague allegations, the Amended Complaint is devoid of any facts that plausibly imply that Officer Sweeney-Jones agreed with another individual to deprive Plaintiff of her rights.

Trying to salvage the § 1985 claims, Hood-Anderson includes in her opposition brief screenshots from security video footage taken inside the New Castle County detention center. *See* D.I. 16 at 11–15. Hood-Anderson did not incorporate these screenshots into the Amended Complaint, attach them to the Amended Complaint, or provide the video to the Court. These screenshots, Hood-Anderson argues, show how "facts related to the conspiracy are alleged in the Amended Complaint." D.I. 16 at 11. Plaintiff asserts that the screenshots offer "plausible" evidence and "definitively confirm[]" that Defendants "acted in a coordinated, broadly conspiratory manner to deprive the Plaintiff of her rights and privileges." D.I. 16 at 16. Hood-Anderson cites no legal authority establishing that I may consider the screenshots at the motion to dismiss stage.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). When deciding a Rule 12(b)(6) motion, courts therefore consider "the complaint in its entirety, as well as other sources . . . [such as] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Courts may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Mayer*

*v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Notably, "a document *integral to or explicitly relied upon* in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *In re Burlington Coat*, 114 F.3d at 1426 (emphasis in the original) (internal quotation and alteration omitted).  "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  *Id.*

The Amended Complaint refers to the video only once, alleging that "[t]he events leading up to the violent actions by Officer [Sweeney-Jones], while in the course and scope of his employment with [the County] were captured on internal security footage."  D.I. 8 ¶ 25.  At no other point in the Amended Complaint does Plaintiff cite to the video or describe its contents.  If the video were truly "integral to" the Amended Complaint, Hood-Anderson presumably would have discussed its contents in greater depth.  *See In re Burlington Coat*, 114 F.3d at 1426.  Similarly, if the Amended Complaint "explicitly relied upon" the video, the Amended Complaint would have said so.  *See id.*  The claims in the Amended Complaint also are not "based" on the video.  Rather, the claims are based on the *events* that allegedly occurred on November 21, 2022.  And those events just happened to be captured on video.  More generally, Hood-Anderson cannot save a sloppily drafted complaint from dismissal by padding her opposition brief with extrinsic evidence.

Accordingly, I will not consider the screenshots for the purposes of Defendants' motion to dismiss.

Even if I were to consider the screenshots, Hood-Anderson has still failed to allege facts from which an unconstitutional conspiracy can be inferred. At most, the screenshots show one element of conspiracy, concerted action, without the other element, agreement. *See Capograsso*, 588 F.3d at 185 (stating the "elements of a conspiracy: agreement and concerted action"). For example, one screenshot depicts two officers appearing to restrain Hood-Anderson in a holding cell. *See* D.I. 16 at 14. But the video does not demonstrate any agreement among the officers. The screenshots therefore do not provide sufficient facts from which I can infer that Officer Sweeney-Jones and other officers conspired to violate Hood-Anderson's constitutional rights.

Hood-Anderson has also failed to plead sufficient facts to satisfy the specific requirements of a plausible § 1985(2) or § 1985(3) claim. The Amended Complaint does not identify the subsection of § 1985 under which Hood-Anderson proceeds. *See generally* D.I. 8 ¶¶ 31–63. Hood-Anderson instead argues that "[a] plain reading of the Amended Complaint displays primarily the third element of [§ 1985 of] 'depriving a plaintiff of rights or privileges' and to a lesser extent the second element of 'obstructing justice or intimidating a party.'" D.I. 16 at 10. To support this argument, Hood-Anderson points to paragraphs 1, 35, 37, 40, 43, 44,

49, and 50 of the Amended Complaint.  D.I. 16 at 10.  Each of those paragraphs

allege that Hood-Anderson's civil rights were violated.  *See, e.g.*, D.I. 8 ¶ 37

("Plaintiff posed no probable threat to Defendant [Sweeney-Jones] when he

violated Plaintiff's civil rights, while acting in his official capacities.").

But conclusory allegations that Hood-Anderson's civil rights were violated

are insufficient to plead a claim under § 1985(2) or § 1985(3).  Both sections

require an intent to deprive another of equal protection of the laws or equal

privileges and immunities under the law.  *See* 42 U.S.C. § 1985(2) (requiring

"intent to deny to any citizen the equal protection of the laws"); 42 U.S.C.

§ 1985(3) (requiring a conspiracy "for the purpose of depriving . . . any person or

class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws").  Sections 1985(2) and 1985(3) therefore apply only if

there is "racial, or perhaps otherwise class-based, invidiously discriminatory

animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102

(1971); *see also Davis v. Township of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999)

(discussing § 1985(2)); *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir.

2006) (discussing § 1985(3)).

Here, Hood-Anderson has not alleged any such racial or class-based animus.

The facts alleged in the Amended Complaint also cannot be reasonably interpreted

to state a § 1985(2) claim because "[t]he gist of the wrong at which § 1985(2) is

directed is . . . intimidation or retaliation against witnesses in federal-court proceedings." *Haddle v. Garrison*, 525 U.S. 121, 125 (1998). At no point does the Amended Complaint allege that Hood-Anderson was a witness, much less that Defendants violated her rights as a means of intimidation or retaliation for testifying. I will therefore dismiss without prejudice the § 1985 claims in Counts I, II, and III against the County and Officer Sweeney-Jones.

### B.    Count V (Failure to Train Claim)

Hood-Anderson alleges in Count V of the Amended Complaint that the County failed to adequately train New Castle County police officers, including Officer Sweeney-Jones, "with respect to proper procedures to follow when placing a custodial detainee in a holding cell." D.I. 8 ¶ 77; *see also* D.I. 8 ¶¶ 77–84. Defendants seek to dismiss this failure to train claim against the County and Officer Sweeney-Jones. D.I. 11 at 15–16.

"[I]n the absence of an unconstitutional policy [or custom], a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). A failure to train serves as a basis for § 1983 liability only when the failure to train "amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v.*

*Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference is "a stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." *Bryan Cnty.*, 520 U.S. at 410.  To sufficiently plead

deliberate indifference, a plaintiff must show that "(1) municipal policymakers

know that employees will confront a particular situation; (2) the situation involves

a difficult choice or a history of employees mishandling; and (3) the wrong choice

by an employee will frequently cause deprivation of constitutional rights." *Carter*,

181 F.3d at 357.

        Put differently, a municipal policymaker must have notice that the training

program will violate individuals' constitutional rights.  *See Connick*, 563 U.S. at 62

("Without notice that a course of training is deficient in a particular respect,

decisionmakers can hardly be said to have deliberately chosen a training program

that will cause violations of constitutional rights.").  "A pattern of similar

constitutional violations by untrained employees is 'ordinary necessary' to

demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting

*Bryan Cnty.*, 520 U.S. at 409).  Alternatively, deliberate indifference may be based

on a single incident but only if the plaintiff shows that her injury was an "obvious

consequence" of the deficient training program. *See id.* at 63–64.  A plaintiff must

also establish that "the identified deficiency in a [municipality's] training program

25

[was] closely related to the ultimate injury" such that "the deficiency in training actually caused" the constitutional violation. *Harris*, 489 U.S. at 391.

### 1.    The County

Defendants argue that Hood-Anderson's failure to train to claim should be dismissed against the County because "Plaintiff has not alleged particular facts sufficient for the Court to infer that the County has failed to train its employees, or a pattern of similar constitutional violations by untrained employees." D.I. 11 at 15. To support her claim, Hood-Anderson points to paragraphs 29, 30, and 74 through 84 of the Amended Complaint. D.I. 16 at 17–19 (some capitalization removed).

Paragraphs 74 through 84 contain only conclusory assertions that the County failed to train its police officers. *See, e.g.*, D.I. 8 ¶ 77 ("The training policies of the Defendant New Castle County police department were not adequate to train its police officers, including but not limited to the Officer Defendants, with respect to proper procedures to follow when placing a custodial detainee in a holding cell."); D.I. 8 ¶ 82 ("Defendant New Castle County, through its managers and other staff, including [Bond], was aware that failure to implement some sort of training with respect to their officers' conduct would result in continuing to have numerous unreasonable officer-involved excessive force instances with regularity."). These paragraphs merely provide "[t]hreadbare recitals of the elements of a cause of

action." *Iqbal*, 556 U.S. at 678.  Such a recitation "will not do." *Twombly*, 550

U.S. at 555.  Paragraphs 74 through 84 are therefore insufficient to state a claim.

*See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("After *Iqbal*, it

is clear that conclusory or 'bare-bones' allegations will no longer survive a motion

to dismiss.").

Paragraphs 29 and 30 also do not allege a pattern of constitutional violations

from which I may infer that the County was deliberately indifferent.  Paragraph 29

asserts that Officer Sweeney-Jones "has, on two previous occasions, been involved

in officer-involved use of force investigations, to include (1) a January 22, 2023

shooting of Alistair DiPasquale and Evan Chandler, and (2) a[n] April 19, 2017

shooting of Keith Price."  D.I. 8 ¶ 29.  Paragraph 30 states, "The outcome and

determinations made concerning [Officer Sweeney-Jones's] prior conduct will

require both subpoena and discovery power so Plaintiff can retain further

information regarding those instances of professional conduct and/or misconduct."

D.I. 8 ¶ 30.  Two alleged use of force incidents by a single officer do not establish

a "pattern of similar constitutional violations by untrained employees." *Connick*,

563 U.S. at 62.  Such a pattern is ordinarily required "to demonstrate deliberate

indifference for purposes of failure to train." *Id.*  Hood-Anderson also has failed to

allege that her injury was an "obvious consequence" of the deficient training

program. *See id.* at 63–64. The Amended Complaint therefore does not state a plausible claim that the County was deliberately indifferent.

Hood-Anderson also points to the security video footage to support the failure to train claim in Count V. *See* D.I. 16 at 18–19 (arguing that the "voluminous visual video depictions of the methods, procedures, processes, actions, offenses, etc. (and failures of such) taken by Defendants" are "sufficient to properly support Plaintiff's claims"). As discussed above, however, I will not consider the video for purposes of Defendants' motion to dismiss.

In a final attempt to salvage the failure to train claim against the County, Hood-Anderson relies again on *respondeat superior*. *See* D.I. 16 at 19. Hood-Anderson argues that, even if Count V is dismissed against Bond and Officer Sweeney-Jones, "the *Respondeat Superior* relationship should cause this claim to stand as against [the County]." D.I. 16 at 19. This argument fails. As discussed above, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Accordingly, I will dismiss Count V against the County without prejudice.

### 2.    Officer Sweeney-Jones

Defendants argue that I should dismiss Hood-Anderson's failure to train claim against Officer Sweeney-Jones because "a 'municipal liability' [claim] for failure to train is not appropriate to allege against him as an individual officer."

28

D.I. 11 at 16.  Hood-Anderson does not respond to this directly, pointing instead to paragraphs 17, 18, 19, and 21 of the Amended Complaint.  *See* D.I. 16 at 16–17.

Paragraphs 17, 18, 19, and 21 describe Officer Sweeney-Jones's alleged actions in the holding cell.  *See, e.g.*, D.I. 8 ¶ 17 (alleging that Officer Sweeney-Jones "forcefully grabbed, pushed, punched, tackled, and/or otherwise struck [Hood-Anderson] prior to and while she was in a New Castle County holding cell").  But nowhere in the Amended Complaint does Hood-Anderson allege that Officer Sweeney-Jones is responsible for training other police officers.  Hood-Anderson refers to Officer Sweeney-Jones merely as "an agent and/or employee of the New Castle County Police Department."  D.I. 8 ¶ 4.  And in her briefing, Hood-Anderson even concedes that "[i]t is currently unknown whether Officer Sweeney-Jones was superior to the other unknown officer in the video footage." D.I. 16 at 17.  Accordingly, I will dismiss Count V against Officer Sweeney-Jones.

### C.    Count X (Gross Negligence Claim)

Defendants seek to dismiss Count X against the County under Rule 12(b)(1). *See* D.I. 11 at 21.  Defendants argue that I lack subject matter jurisdiction over this count because, by statute, the County is immune from tort claims.  *See* D.I. 11 at 19.

The County and Municipal Tort Claims Act (the Act), codified at Del. Code Ann. tit. 10, §§ 4010–4013 (2025), grants broad immunity from tort claims to local

governmental entities and their employees. *See McCaffrey v. City of Wilmington*, 133 A.3d 536, 545 (Del. 2016) ("In general, municipalities in Delaware are immune from suit for state law claims under the Tort Claims Act."); *see also Sadler v. New Castle County*, 565 A.2d 917, 921 (Del. 1989) (explaining how "the grant of immunity [in the Act] is broadly cast and open-ended"). The Act provides that "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." Del. Code Ann. tit. 10, § 4011(a). "Like qualified immunity under federal law, immunity under the Tort Claims Act is not merely a 'defense to liability,' but rather an 'immunity from suit' for damages." *McCaffrey*, 133 A.3d at 546 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Courts lack subject matter jurisdiction over those who are immune to suit. *See, e.g., Gary v. Pa. Hum. Rels. Comm'n*, 497 F. App'x 223, 227 (3d Cir. 2012) (affirming dismissal based on lack of subject matter jurisdiction over state law claims asserted against defendants who were statutorily "immune from suit").

The Act exposes municipal governmental entities and employees to liability for tort claims in certain limited circumstances. *See* Del. Code Ann. tit. 10, §§ 4011(c), 4012. The statutory exceptions to immunity depend on the type of defendant involved. *Compare* Del. Code Ann. tit. 10, § 4011(c) *with* Del. Code

30

Ann. tit. 10, § 4012.  Section 4011(c) of the Act provides an exception to immunity

for municipal government employees, stating that:

> [a]n employee may be personally liable for acts or
> omissions causing property damage, bodily injury or death
> in instances in which the governmental entity is immune
> under this section, but only for those acts which were not
> within the scope of employment or which were performed
> with wanton negligence or wilful and malicious intent.

Del. Code Ann. tit. 10, § 4011(c).

Section 4012 of the Act, by contrast, applies to governmental entities and

lists the only three instances in which "[a] governmental entity shall be exposed to

liability for its negligent acts or omissions causing property damage, bodily injury

or death."  Del. Code Ann. tit. 10, § 4012; *see also Fiat Motors of N. Am., Inc. v.

Mayor & Council of City of Wilmington*, 498 A.2d 1062, 1066 (Del. 1985)

(explaining how, "in the absence of an explicit statute indicating otherwise, the

activities listed in § 4012 are the only activities" for which "a municipal

government is not to have immunity").  The Delaware Supreme Court has noted

that "the word 'negligent' in § 4012, referring to the [municipality's] liability, . . .

mean[s] ordinary negligence as opposed to 'wanton' (or gross) negligence or

'willful and malicious intent' (intentional acts)."  *City of Wilmington v. Sikander*,

2006 WL 686589, at *2 n.4 (Del. Mar. 17, 2006).  Other Delaware courts have

similarly found that § 4012 strips local governmental entities of immunity for

claims of ordinary negligence, not gross negligence.  *See Schueler v. Martin*, 674

A.2d 882, 888 (Del. Super. Ct. 1996) ("[Section] 4012 acts as a waiver of local

governmental entity immunity where carefully prescribed acts are done

*negligently*.") (emphasis in the original); *Garvin v. City of Wilmington*, 2018 WL

2220935, at *2 (Del. Super. Ct. May 8, 2018) ("Sections 4010–4012 of the County

and Municipal Tort Claims Act[] is unlike the State Torts Claim Act and does not

blatantly bar immunity for gross negligence."); *see also Farris v. Moeckel*, 664

F. Supp. 881, 897 (D. Del. 1987) ("Section 4012 exempts municipal entities from

immunity only for *negligent* acts or omissions.  As applied to governmental

entities, the Tort Claims Act does not create an exemption from its blanket

immunity provision for conduct that is . . . grossly negligent.") (emphasis in the

original) (citations omitted).  Under the Act, a municipal government thus cannot

be liable for a gross negligence claim.

Section 4012 of the Act bars Hood-Anderson's gross negligence claim

against the County.  As stated above, § 4012 exposes a local governmental entity

to liability for "its negligent acts or omissions," Del. Code Ann. tit. 10, § 4012, not

its "grossly negligent actions," D.I. 8 ¶ 114.  *See Sikander*, 2006 WL 686589, at *2

n.4.  The parties do not dispute that the County constitutes a "governmental entity"

under the Act.  *See* Del. Code Ann. tit. 10, § 4010(2) (defining "[g]overnmental

entity" to mean, in part, "any municipality, town, county, administrative entity or

instrumentality created pursuant to Chapter 8 of Title 22 or Title 9"); D.I. 8 ¶ 3

(describing the County as "a municipal corporation duly organized, existing and operating under and pursuant to the applicable laws of the State of Delaware"). By directing Count X to the County, D.I. 8 ¶ 107, Hood-Anderson asserts a gross negligence claim against a local governmental entity. The plain language of § 4012 bars such a claim as a matter of law.[5]

In her briefing, Hood-Anderson utterly fails to rebut Defendants' argument that Hood-Anderson's gross negligence claim is statutorily barred with respect to the County. *See* D.I. 16 at 22–23. Hood-Anderson instead argues that "[i]mmunity of government officials is not absolute," and "[w]hen conduct reaches a certain level of outrageousness, that immunity can become unavailable." D.I. 16 at 23. At no point, however, does Hood-Anderson acknowledge that the County and Municipal Tort Claims Act establishes when municipal government officials

---

[5] In the Amended Complaint, Hood-Anderson asserts that her "allegations of gross or wanton negligence against the Officer Defendants are not barred by the Delaware State Tort Claims Act (10 Del. C. § 4001) as sovereignty is not a valid defense to allegations of gross or wanton negligence." D.I. 8 ¶ 116. I will disregard this assertion for two reasons. First, this statement is a legal conclusion, and I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Second, based on the facts as pleaded in the Amended Complaint, the Delaware State Tort Claims Act does not apply here. The State Tort Claims Act, codified at Del. Code Ann. tit. 10, §§ 4001–4006, limits civil liability for "the State or any public officer or employee." Del. Code Ann. tit. 10, § 4001. Here, however, Hood-Anderson asserts a gross negligence claim against New Castle County and other county employees. *See* D.I. 8 ¶¶ 106–22. The County and Municipal Tort Claims Act, rather than the State Tort Claims Act, thus applies.

33

and entities are subject to liability for tort claims. *See* Del. Code Ann. tit. 10, §§ 4010–4013.[6]

Hood-Anderson further asserts that she "has plainly plead[ed] gross negligence against all Defendants." D.I. 16 at 22. The problem here, however, is not a matter of pleading. Rather, the problem is that the Act bars gross negligence claims against the County as a matter of law. *See McCaffrey*, 133 A.3d at 546 ("[I]mmunity under the [County and Municipal] Tort Claims Act is . . . an immunity from suit for damages.") (internal quotations omitted). Because I lack subject matter jurisdiction over the claim, I will dismiss Count X against the County with prejudice.

### D.    Leave to Amend the Complaint

Finally, the parties dispute whether Hood-Anderson should be granted leave to amend the Amended Complaint. Hood-Anderson has already amended her Complaint once, D.I. 8, in response to Defendants' initial motion to dismiss, D.I. 6. Defendants subsequently filed the present motion to dismiss the Amended Complaint. D.I. 10. Rather than requesting leave to amend, Hood-Anderson chose

---

[6] At one point in her briefing, Hood-Anderson cites to "10 Del. C. § 4011(c)." D.I. 16 at 23. As discussed above, § 4011(c) states that a local government *employee* may be liable for acts "performed with wanton negligence or wilful and malicious intent." Del. Code Ann. tit. 10, § 4011(c). Because Defendants seek to dismiss Hood-Anderson's gross negligence claim against the County only, § 4011(c) does not apply.

to oppose Defendants' motion to dismiss on the merits.  D.I. 16.  In her opposition

brief, Hood-Anderson now requests leave to amend the Amended Complaint

"[s]hould any claims be found deficient."  D.I. 16 at 24.  Defendants oppose any

further amendment of the Amended Complaint, asserting that the claims "are

legally deficient and any further amendment would be futile."  D.I. 20 at 10.

"[I]n civil rights cases[,] district courts must offer amendment—irrespective

of whether it is requested—when dismissing a case for failure to state a claim

unless doing so would be inequitable or futile."  *Fletcher-Harlee Corp. v. Pote

Concrete Contractors*, 482 F.3d 247, 251 (3d Cir. 2007).  Amendment is futile

when "the complaint, as amended, would fail to state a claim upon which relief

could be granted."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Leave to

amend therefore must be granted "unless the amendment would not cure the

deficiency."  *Id.*

Only two of Hood-Anderson's claims fail as a matter of law—the § 1983

claim based on the Eighth Amendment in Count II and the gross negligence claim

in Count X as applied to the County.  *See Boring*, 833 F.2d at 471 (stating that

"[p]retrial detainees are not within the ambit of the Eighth Amendment"); *Garvin*,

2018 WL 2220935, at *2 ("Sections 4010–4012 of the County and Municipal Tort

Claims Act[] . . . do[] not blatantly bar immunity for gross negligence.").  Because

I will dismiss the remaining claims for lack of factual support, amendment would

not be futile.  Hood-Anderson shall therefore have the opportunity to file a Second Amended Complaint to cure any factual deficiencies.

## IV.    CONCLUSION

For the reasons stated above, I will grant in part and deny in part Defendants' motion to dismiss.  I will grant the motion with respect to the official capacity claims against Bond and Officer Sweeney-Jones; the § 1983 claims against the County in Counts I, II, and III; the § 1983 claim against Officer Sweeney-Jones in Count II; the § 1986 claims in Counts I, II, and III; Count IV; Count V; Count VI; Count IX; and Count X against the County.  I will deny the motion with respect to the § 1983 claim against Officer Sweeney-Jones in Count III.

The Court will issue an Order consistent with this Memorandum Opinion.